

# NUMBER 13-07-00690-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **BRAD LIVINGSTON, ROBERT TREON, MARTHA WEAR, AND PAUL MORALES,** | **Appellants,** |
| **v.** | |
| **ATIBA RAMONE TAYLOR, TDCJ #1082601,** | **Appellee.** |

## On appeal from the 156th District Court of Bee County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Justice Benavides**

Appellants, Brad Livingston, Robert Treon, Martha Wear, and Paul Morales (collectively, "the Livingston defendants"),[1] appeal from the trial court's denial of their motion for summary judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5)

---

[1] When the underlying suit was file, Livingston was the Executive Director of the Texas Department of Criminal Justice, Treon was the TDCJ-CID Region IV Director, Wear was an Assistant Director of TDCJ-CID Region IV, and Morales was a Warden at the McConnell Unit.

(Vernon 2008) (providing for the appeal of a district court's interlocutory order that "denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state"). On appeal, the Livingston defendants assert that (1) they are entitled to official immunity, and (2) they are entitled to qualified immunity. We reverse and render judgment for the Livingston defendants.

## I. BACKGROUND

Appellee, Atiba Ramone Taylor, is an inmate at the McConnell Unit, a Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") facility in Beeville, Texas. On August 8, 2005, claiming that his cell leaked water, particularly during rainy weather, Taylor filed a Step 1 grievance. Taylor alleged that the leaking sometimes flooded the whole floor and "floods out the entire run." "These living conditions are a risk at . . . pneumonia, patheginical [sic] infections (that breed on stagnated water just as West Nile infected mosquitos), at fungal, and other aquatic, or viral life forms, and a risk of electricution [sic]." He was also denied "mops [ ] and other cleaning materials . . . ." Pursuant to an investigation of this complaint, a work order for repairs was generated. On September 28, 2005, Taylor filed a Step 2 grievance alleging that no repairs had been made. Taylor stated that he had been "dealing" with this issue since the beginning of 2004. Taylor was informed that the work order was sufficient to address his complaint and that he should ask for more towels if water enters his cell.

On November 14, 2005, proceeding pro se and in forma pauperis, Taylor filed a section 1983 action against the Texas Department of Criminal Justice ("TDCJ") asserting that it violated his Eighth Amendment right to be free from cruel and unusual punishment. *See* 42 U.S.C. § 1983; U.S. CONST. amend. VIII. On July 21, 2006, Taylor amended his

petition to include the Livingston defendants as parties to the suit and to add a new claim under the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 2005). Taylor asserted that the conditions in his cell caused him rashes and skin bumps, the discharge of black mucus when he sneezes and coughs, and shortness of breath. On March 16, 2007, the trial court held a telephone conference in which Taylor's Texas Tort Claims Act claim was dismissed against all parties. The section 1983 claims proceeded against the Livingston defendants in their official and individual capacities but were dismissed as to the TDCJ.[2]

On May 15, 2007, the Livingston defendants filed a traditional motion for summary judgment asserting sovereign, official, and qualified immunity. *See* TEX. R. CIV. P. 166a. On October 19, 2007, the trial court denied the Livingston defendants' motion for summary judgment. This appeal ensued.

## II. STANDARD OF REVIEW

We review the grant or denial of a traditional summary judgment de novo. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005) (citing *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 290 n. 137 (Tex. 2004)). To be entitled to summary judgment, the movant must demonstrate that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). Once the movant satisfies his burden, the burden shifts to the non-movant to produce evidence sufficient to raise a fact issue. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In determining whether a fact issue exists, evidence favorable to the non-movant

---

[2] During the March 16, 2007 telephone conference, the trial court recognized that an agency is not an appropriate party to a section 1983 action. *See Retzlaff v. Tex. Dep't of Crim. Justice*, 135 S.W.3d 731, 744 (Tex. App.–Houston [1st Dist.] 2003, no pet.) (citing *Denson v. T.D.C.J.-I.D.*, 63 S.W.3d 454, 461 (Tex. App.–Tyler 1999, pet. denied)).

3

is taken as true. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)). All doubts will be resolved in favor of the non-movant, and all reasonable inferences will be indulged in his favor. *Id.* (citing *Nixon*, 690 S.W.2d at 549).

### III. Sovereign Immunity[3]

The Livingston defendants assert that, in their official capacity as employees of TDCJ, they are entitled to sovereign immunity. *See Vela v. Rocha*, 52 S.W.3d 398, 403 (Tex. App.–Corpus Christi 2001, no pet.) ("An individual sued in his official capacity . . . may in some cases enjoy the protections of sovereign immunity to the extent those protections are available to his employer."); *Hidalgo County v. Gonzalez*, 128 S.W.3d 788, 793 (Tex. App.–Corpus Christi 2004, no pet.) ("If the governmental unit would be immune due to sovereign immunity, so is the governmental official sued in his official capacity."). Congress did not intend section 1983 of the Civil Rights Act to abrogate a state's sovereign immunity without the state's consent.[4] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989) (holding that "a State is not a person within the meaning of § 1983."); *see* 42 U.S.C. § 1983. Therefore, TDCJ is not a proper party to a section 1983 claim. *Harrison v. Tex. Dept. of Criminal Justice-Institutional Div.*, 915 S.W.2d 882, 889 (Tex. App.–Houston [1st Dist.] 1995, no pet.) ("Neither a state nor its officials acting in their

---

[3] The Livingston defendants appear to use the terms "official immunity" and "sovereign immunity" interchangeably. However, the more accurate term for the assertion in their first issue is "sovereign immunity." *See Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843 (Tex. 2007) ("[A]n official sued in his individual capacity would assert official immunity as a defense to personal monetary liability, which is well suited for resolution in a motion for summary judgment. But an official sued in his official capacity would assert sovereign immunity.") (internal citations omitted).

[4] Section 1983 provides: "Every person who, under color of any statute . . . of any State . . . subjects . . . any citizen of the United States . . . within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983 (1996); *see Scott v. Britton*, 16 S.W.3d 173, 180 (Tex. App.–Houston [1st Dist.] 2000, no pet.).

official capacities are 'persons' under § 1983."). When sued under section 1983 in his official capacity, a suit against a state official is a suit against the state, and is therefore barred by sovereign immunity. *See Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 581 (Tex. 2001). We conclude that the Livingston defendants are protected by sovereign immunity in their official capacities and sustain their first issue. *See id.* at 582.

## IV. QUALIFIED IMMUNITY[5]

Qualified immunity shields a government official "performing discretionary functions from liability for civil damages under section 1983, provided the official's conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have been aware." *Scott v. Britton*, 16 S.W.3d 173, 180 (Tex. App.–Houston [1st Dist.] 2000, no pet.) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Legal rights are clearly established when the "'contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Tex. Dep't of Criminal Justice v. Thomas*, 263 S.W.3d 212, 219 (Tex. App.–Houston [1st Dist.] 2007, pet. denied) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

When a government official pleads qualified immunity, the summary judgment

---

[5] We recognize that the terms "official immunity" and "qualified immunity" are often used interchangeably. S*ee Travis v. City of Mesquite*, 830 S.W.2d 94, 100 n.2 (Tex. 1992) (Cornyn, J., concurring). However, the doctrines are separate defenses: qualified immunity applies when federal law claims are raised while official immunity applies when state law claims are raised. *See Newman v. Kock*, 274 S.W.3d 697, 705 (Tex. App.–San Antonio 2008, no pet.); *see also Hudson v. Vasquez*, 941 S.W.2d 334, 338 (Tex. App.–Corpus Christi 1997, no writ) (noting that "the federal test is nevertheless distinct from the state test, and resolution of state law immunity issues does not resolve federal immunity issues under section 1983."). When considering claims of qualified immunity, Texas courts apply the same burden shifting as the Fifth Circuit. *See e.g.*, *Newman*, 274 S.W.3d at 705; *Leachman v. Dretke*, 261 S.W.3d 297, 313 (Tex. App.–Fort Worth 2008, no pet.); *Tex. Dep't of Criminal Justice v. Thomas*, 263 S.W.3d 212, 219 (Tex. App.–Houston [1st Dist.] 2007, pet. denied); *Carrera v. Yepez*, 6 S.W.3d 654, 661 (Tex. App.–El Paso 1999, pet. dism'd w.o.j.) ("The affirmative defense of qualified immunity, however, gives rise to shifting burdens.") (citing *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992) (explaining the burden shifting process in qualified immunity cases)).

burden shifts to the plaintiff to produce evidence which establishes that the official's conduct violated the clearly established law. *Newman v. Kock*, 274 S.W.3d 697, 705 (Tex. App–San Antonio 2008, no pet.) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)); *see Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (noting that qualified immunity is immunity from suit, not merely a defense to liability). "Once the defendant official pleads good faith and demonstrates that the challenged actions occurred in the context of discretionary authority, the burden shifts to the plaintiff to rebut this defense." *Scott v. Godwin*, 147 S.W.3d 609, 616 (Tex. App.–Corpus Christi 2004, no pet.) (citing *Carrera v. Yepez*, 6 S.W.3d 654, 661 (Tex. App.–El Paso 1999, pet. dism'd w.o.j.); *Haynes v. City of Beaumont*, 35 S.W.3d 166, 176 (Tex. App.–Texarkana 2000, no pet.)).

To prove an Eighth Amendment violation based on the conditions of confinement, the plaintiff must show that the deprivation he alleges is objectively serious and that the government official acted with deliberate indifference to his health and safety. *Hernandez v. Velasquez*, 522 F.3d 556, 560-61 (5th Cir. 2008); *Britton*, 16 S.W.3d at 181. To demonstrate that the deprivation he alleges is objectively serious, Taylor must show "that the condition [is] so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need.'" *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (quoting *Harris v. Angelina County*, 31 F.3d 331, 334 (5th Cir. 1994)). To prove deliberate indifference, the plaintiff must show that the official was "aware of facts from which it could be inferred that a substantial risk of serious harm exists, and must draw that inference." *Britton*, 16 S.W.3d at 181. "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Assuming, *arguendo,* that Taylor's housing conditions were objectively serious, we conclude that Taylor failed to prove that the Livingston defendants acted with deliberate indifference. *See Britton*, 16 S.W.3d at 181. As the Supreme Court has noted, "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. There must have been "'more than ordinary lack of due care for the prisoner's interests or safety.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The summary judgment evidence presented to the trial court demonstrated that, not only were the Livingston defendants not negligent, they were pursuing solutions to the problems.

Treon stated in his affidavit that 8-Building, among other buildings in the McConnell Unit, had an outstanding Major Work Request to replace its roof, which was part of a project to replace 445,524 square feet of roof. Livingston attached to his motion for summary judgment work orders for roof repairs between March 2004 and February 2005. Norris Jackson, an assistant warden at the McConnell Unit, testified via affidavit that there was a Major Work Order for repairing 8-Building's roof with work projected to begin in October 2006 and finishing in October 2007. In response to Taylor's Step 1 grievance, the warden noted that "a work order has been generated and has been deferred to regional headquarter[s]. Once more material is received, repairs will be made." Unsatisfied by this result, Taylor filed a Step 2 grievance to which Treon responded, "The Step 1 response has addressed your complaint. Additionally, notify staff to request extra towels if water enters your cell."

One federal district court has addressed this precise issue of leaking cells at the McConnell Unit. In *Weber v. Stevens*, the District Court for the Southern District of Texas noted,

> The mere fact that defendants were aware that the roofs throughout the prison facility needed to be replaced is insufficient to prove that defendants were deliberately indifferent to plaintiff's health and safety. To the contrary, the evidence shows that a concentrated effort was being made to protect the health and safety of plaintiff and other inmates by responding to maintenance work orders.

*See also* No. C.A. C-04-378, 2005 WL 2076280, at *6 (S.D. Tex. Aug. 26, 2005) (finding also that, on similar facts, plaintiff failed to establish that such living conditions were objectively serious).  Similarly, we conclude that Taylor has failed to satisfy his burden of proving that Livingston acted with deliberate indifference to his health and safety. Therefore, we conclude that the Livingston defendants are entitled to qualified immunity, and we sustain their second issue.

## V. Conclusion

Having found that the Livingston defendants are entitled to sovereign and qualified immunity, we reverse the trial court's judgment and render judgment that, on his section 1983 claims, Taylor take nothing from the Livingston defendants in either their official or individual capacities.  *See Petta*, 44 S.W.3d at 581.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and
filed this the 6th day of August, 2009.

8